Good afternoon, your honors. Gary Lafayette appearing on behalf of the defendant, the appellate regents of the University of California, and the issue squarely before the court is whether or not the regents waived its 11th Amendment immunity as to claims which were not claimed at the time of the hearing. that it removed this matter to district court. And since the appeal was filed, we've gotten some clarity with regard to the 11th Amendment immunity by the U.S. Supreme Court in the Lapidus decision, but I think Lapidus decision doesn't go as far as to address the issues here. Counsel, you're right, of course, that it doesn't go so far as to address these issues. It could be distinguished, but I don't really understand why it should be distinguished. I think it should be distinguished, your honor, because of the differences and the uncertainty that could be created with regard to state entities that are faced with the issue of whether or not to remove a case or to let that case stay in the state court. Why? I mean, you know that until the verdict is rendered, no case is really fixed in concrete. You know that under the federal rules, amendment is, leave to amend is liberally granted under Rule 15. The university chooses to remove to federal court. Why doesn't that mean it takes the bad with the good? It's in federal court. There's going to be amendment. It's more likely than not that there'll be some changes in the shape of the litigation or it's over. I think there are two issues here. One is the particular circumstances of this case, which we believe that the U.S. Supreme Court left open in Lapidus case, because this question is whether or not there are facts related to this particular removal, which in any way require that this case be taken out of the rubric that is created in Lapidus situation. And I think there are. And I think the things we need to look at is what I could refer to as the forum shopping which took place in this case. And I could also talk about the intentional acts which took place in this case. But I draw the court to December 29, 2000, because on December 29, 2000, two actions were filed by the then plaintiff in this case. One was filed in U.S. District Court. The other case was filed in the San Francisco County Superior Court. Those two actions were mirror images of each other. They are the same actions for all intents and purposes. Why is that responsive? It seems to me it's the university's idea to remove the state action to federal court. It is because of the amendment which takes place with regard to the state court action. The state court action had embedded within it a violation, a procedural due process violation claim, one under state law and one under federal law, both of them. But by the time this action was served upon the regents, those two claims as against the regents were dismissed. Plaintiff amended the complaint and in the process of amending the complaint, took the regents out of those due process claims. Now having done that act, plaintiffs create an environment where the regents could reasonably believe that based upon that intentional conduct on their part, that the regents were not going to be subject to those claims in the state court action, because at the same time they did that, they left the district court action intact. The district court action including the two procedural, the due process violations claims. So if you look at that, you're a reasonable defendant. What do you think? You think that the only case that they're going to proceed with now is the one that they have filed, which does not include these two causes of actions. These two causes of actions which existed against the regents when the case was originally filed in the Supreme Court. I don't think that. I mean, as discovery goes on, as motion practice goes on, everybody does whatever is most to their advantage. And if a part of the summary judgment looks like it's going badly, there's an amendment to put something in there that looks like it'll go better? I think if you were looking at a case where you were just looking at a straight case filed in the Superior Court, not a case that was filed concurrently with a case filed in the district court, not a case that had claims which you're now trying to pursue, that's not the case. That's the problem. The problem in this situation is you have two causes of actions which were originally there, which were part of the case. So what more is there to learn between the time that that case was filed, that amendment was filed, removal filed, and this case was, and the second amendment complaint was filed? There was no discovery. I could understand if what happened here is there was some discovery which made them believe that the cause of action that they had previously dismissed now had some merit. There was not. This case comes to this court because of a motion to dismiss. So there is nothing new that comes forward which justifies the reversal of their decision to dismiss those two causes of actions before this action was actually removed. Is there any reason why we shouldn't just have a nice simple rule in federal court that if an otherwise immune defendant removes to federal court, the immunity is waived, as opposed to having a case-by-case determination that would make it less predictable, more difficult to administer? I would not favor a rule that says simply because there's a removal there has been a waiver of all 11th Amendment immunity. I think on some level, because I think as the Supreme Court says, we have to look to the particular circumstances of each case, and we have to make some determinations as to whether or not someone is going to obtain some unfair tactical advantage. What are you relying on in the Supreme Court decision? Just a second. The Supreme Court states, and unless we are to abandon the general. Hold on, you're talking Lapidus, right? Yes, Your Honor. What page? 1644. Thanks. Thank you, Your Honor. Court writes, and unless we are to abandon the general principle just stated, or unless there is something special about removal or about this case, the general legal principle requiring waiver ought to apply. And it is in that phrase, or unless there is something special about removal or about this case, where the Supreme Court is essentially leaving open the opportunity for a case just like the one that we have here today, where a tactical advantage could be obtained. And I would like to address the spirit of that tactical advantage. What happened to the district court case, the one that was originally filed in district court? After this case was removed to federal court, the district court action was dismissed. And if we take a look at that, that was a case in which the university, the regents, as the state, was involuntarily, could have been involuntarily brought into an action in federal court. In which it could have responded to that complaint, asserting its 11th Amendment immunity, and we wouldn't have had any issues here. By proceeding with two actions, then amending and taking out the due process clause of action, which is the only action which could have led to jurisdiction in this state, could have led to jurisdiction here in the district court, you wind up with a situation where the university doesn't get to take advantage of that defense, the 11th Amendment immunity, that it could have asserted in a case that had original, where the original action was filed in the district court. So what you find now is that there is a tactical advantage. And as to the advantage in that case, it was concerned there might be a tactical advantage to the state, and it specifically spoke to about the state's 11th Amendment position would permit states to achieve unfair tactical advantages, if not in this case and others. The counsel just before that, though, didn't the court state that motives are difficult to evaluate so that jurisdictional rules should be clear, as opposed to trying to evaluate the respective motives of the parties? Yes, Your Honor. And it was speaking specifically to the motives of the state in that instance. We're not talking about motives here. We're talking about conduct. And the Supreme Court said that what we should be looking to is conduct and not motives, simply because of what you just said. And when we start looking to the conduct here, the conduct becomes painfully clear. I thought you said that the motive of opposing parties was to gain a tactical advantage. Isn't that a motive as opposed to merely conduct? It could be a motive, it could be a result. It could be a result in this case without even looking to motive, because the net result here is that the university would have lost its 11th Amendment immunity that it could have asserted to that case, which was originally filed in the district court. That's the tactical advantage. And what you also create is a future tactical advantage where those individuals suing the state will sue in state court, not file the full panoply of causes of actions, not even file those actions that they contemplate, that they know they're going to pursue, and bait the state into removing a case into federal court and then amend. And the state's defense against that is just to stay in state court, isn't it? Well, that is a defense, but is that the defense that we always want to have, that we want to tell the defensive state that it should never, ever remove a case? That's not the way I think we should proceed either. And I point out one particular thing here. The district court gave leave to amend to cure defects in a complaint. This was an issue that first arises as to the first amended complaint on July 6, 2001. At that hearing, the district court gave leave to amend defects in the complaint, not to allege two new independent causes of action, which is what happened. We now have two causes of actions in this case for which there was no permission for these causes of actions, and they are there, and they are the two offending causes of actions. I do point out that one, only because this court's decision in Lake Tahoe and the U.S. Supreme Court's decision in Lapidus both point out that with regard to damages causes of actions against the state under 1983, those do not lie because the state is not a person. And each of the cases, even though that issue has remained at the point in which the appellate courts have reviewed the matter, the courts have made clear that they recognize and understand that those causes of actions do not lie for damages because the university as a state is not a person. Isn't that true here? I'm sorry, Your Honor. Is that true here, that the 1983 claim against the regents is no good anyway? For damages. But what we're looking at now is the state cause of action under the state constitution, which was never asserted, which to some regard mirrors the 1983 cause of action, and that's the one that we are attempting to avoid at this stage of the game. Counsel, do you distinguish Lake Tahoe on the same basis that you distinguish Lapidus? I think Lake Tahoe is consistent with Lapidus, and I think the thing in Lake Tahoe that is significant is the court did not reach out and address the issue of whether or not the removal actually affects the federal cause of action that could exist. And in that case, the court carefully identified what it thought were issues which took the injunctive claim for relief out and basically stated that the plaintiff in that case had not properly alleged the cause of action for injunctive relief. And in the process, the court was presented without having to address the federal question issue and only had to simply apply the Lapidus test, which is whether or not a state waives its 11th Amendment immunity when it removes a state cause of action to the district court, without having to address the other issue which was there. Counsel, you suggested that there are circumstances where we ought to look at what the reasons for consenting to removal or removing might be as opposed to just having a simple across-the-board rule. When I look at this case in the context of what you suggest, I think the district judge wrote that she had had the case for eight months of fairly substantial activity, heard oral argument twice, decided two motions to dismiss, and the university didn't invoke its 11th Amendment immunity until after that. And when the judge had suggested that she was not disposed to dismiss the state law claims against the university, also when I look at the oral argument, it looks as though the judge asked the state, well, are you waiving your 11th Amendment immunity or not? And the lawyers for the state kind of danced around it. And I put those together. They never said, really. And I put those together, and I'm thinking, oh, they just want to wait and see how it's going. If it's going badly, they'd rather be in a different courtroom with a different judge. And if it's going well, they want to stay there. Now we're looking to motive, but that's a not accurate statement of the record. And I would like to recorrect that record if I would. The only thing that happened in this case before this issue came here was two motions to dismiss, no depositions, no discovery, nothing else. The first one was a motion to dismiss. That motion was granted with leave to amend. I can hardly see how a grant with leave to amend in any way indicates that the court was not disposed to grant that motion. The second motion was simply a motion to dismiss. Now the second amended complaint, the second amended complaint, which without leave of court included two new causes of actions. And as soon as those two new causes of actions were stated and presented, the defendant in that case immediately asserted the Eleventh Amendment immunity. It is set forth in the record, and I'll cite to it. It's in the record at page 677, which is the defendant's at that point's memorandum of points and authorities in support of motion to dismiss second amended complaint. And what you see there is the university asserts at the very first opportunity that these two new causes of actions appear, it's Eleventh Amendment immunity.  It had to do that. And then when you look at further at the first, I would have thought the first opportunity would be when the other defendants came around and said, do you object to removing this to federal court? It's the first opportunity at the time that these two new unapproved causes of actions were asserted. And that's what the university did. And as soon as those two causes of actions, the causes of actions, which is the subject of these proceedings, were asserted, the university asserted its Eleventh Amendment immunity. It could not have asserted those earlier. And indeed, given the record where those two causes of actions were intentionally deleted from the amended complaint before it was served on the regents, it could not have. And in fact, if anything happens, there is a misleading by including them and then deleting them and then leaving an independent federal court cause of action where they remain to lie. That's the problem that we have in this particular case, and that's why we ask the court to look to the particular facts of this case. It would not be appropriate to say that there has been, if there was any way, any substantial work done in this case before this motion was heard. All we had was two motions to dismiss. And with that, I'd like to reserve unless there's a question. Thank you, counsel. Good afternoon, Your Honors. I think there's an issue that I'm compelled to bring to the Court's attention before I move on to the merits. In, I believe, July of last year, we filed a motion for summary affirmance of the district court's decision based on the fact that we dismissed the two causes of action that Mr. Lafayette is now arguing about.  And those were dismissed approximately eight to nine months ago. So in essence, the two causes of action that he seeks to send back to the state court do not exist in this complaint. So all we have left are the state causes of action? Yes, Your Honor. The ones that were in the original complaint before? Yes, there's been some amendments factually as to those. There's also claims for injunctive and declaratory relief, but those were part of the original complaints. You mean that all we have left in the case is the state causes of action that were there when the case was removed? As to the regents? Yes. Yes, Your Honor. That's why we moved for summary affirmance last year, based on the Lapidus decision. And then when it became clear in that motion that they were narrowing the scope of their claims as to 11th Amendment immunity only to the second and third causes of action, since we agree with Mr. Lafayette presently that we cannot sue a state under 1983, we figured discretion was a better part of valor. What about the state causes of action? Those still exist. The due process, Your Honor, we dismissed that also. That's the third causes of action. For basically we looked at this, to be quite frank, we looked at this as a delaying action on the part of the regents and wanted to get back into the merits of the case in the district court. But since we're here and the regents have insisted on going forward, even though Mr. Lafayette has insisted on going forward, I believe that under the exceptions of the mutinous doctrine, based upon the importance of the issues to the circuit as a whole, that the Court is still empowered to basically rule on the matter. What kind of a dismissal was that? They weren't dismissed with prejudice, were they? No, it was a voluntary dismissal without prejudice, Your Honor. And we did file a copy of that with the – with our motion. We sometimes have the rule that we can't move the case that way, or we sometimes do not move the case that way. When one of the parties simply, you know, withdraws, but in a circumstance where they could reassert it once we dismiss it. Your Honor, whether the Court basically says it's moved or not, to be real honest at this point, we do not intend to resurrect those causes of action. But we are willing – actually, I am ready to argue the issues on the merits if the Court wants me to proceed. Our intent always was to go back to Judge Wilkin and litigate this case on the merits. And we believe that what Lapidus – that's basically the underlying issue in Lapidus. Excuse me, counsel. Could you tell me first, these motions to dismiss or rather the motions for summary affirmance usually go to a motions and screening panel rather than the merits panel. I don't remember the motion. It may be that it went to the merits panel and it's just slipped my mind because of the other cases. But where do we find it? Your Honor – Is it in the excerpts of record or will it just be in the material subsequent to that? It would be in the material subsequent. It was filed – it was filed simultaneous with our opening brief because that's right after Lapidus came down. Okay. So the dismissal you're talking about won't be in the excerpts. It will be attached to the motion papers. Correct. And it was we – so the Court understands basically the chronology here. The original argument put forward by the Regents was that all of the state claims should be brought back to the state court. And that was – and that was after – and Lapidus came down. We filed our motion for summary affirmance. They came back and said, well, now we're going to back off and we're only going to deal with the second and third causes of action. We then dismissed those and we filed that with the Court in our reply brief on the motion for summary affirmance. The state court now has not yet addressed the question whether it might remand in or – The district court, Your Honor? There is no state court claim. The state – there is no state court claim at all. That's gone. That's in the Federal court. There's nothing else in the state court. The only action now is there is still an action – Are the state causes of action in the Federal court? Yes, Your Honor. And those have been – those were decided on the merits that causes of action did exist. And that's when then the Regents appealed the entirety of the decision. So this is – Mr. Lafayette is here arguing two causes of action, but you'll notice his notice of appeal dealt with all of the causes of action. Well, okay. When – I mean, Lapidus wasn't down when the removal occurred. I agree, Your Honor. But that's why once Lapidus was decided, we would have assumed that based on the clear decision even – and their comments in their own briefs. They concede the state court. That they should have been sent back to Judge Wilkin. But the action is removed on the ground of the Federal causes of action, I assume. But the 1983 claims against the individual defendants. Okay. Now, those are gone. No, those are not. Those are still pending. Oh, against the individual defendants. That's right. And there's actually a motion for summary judgment that I think Mr. Lafayette and I are waiting for the decision. All right. Okay. All right. That answers my question. So – But these are against the individual – Correct. Regents? No, not the Regents. Okay. Individual members of the faculty and the administration. All right. Okay. And there's also – But you've still got your Federal jurisdiction. And there are actually some claims against the Regents left for equitable and injunctive relief, which I think we all agreed are not subject – were not issues that – that there was 11th Amendment immunity on. So those are still in the district court. But – But, counsel, just so I understand your argument, your argument is that assuming that you have validly discounted the two claims that were an issue, the factual situation here mirrors the one in Lapidus? Your Honor, it doesn't mirror because there's differences. It does or does not? It is – there's differences, but they're differences without meaning. All right. Would you explain that? Your Honor, the position that the Regents take is basically that litigation is stagnant, that once you file a motion – once you file an action that's removed to Federal court, nothing changes. Well, anybody who's litigated more than a week and a half understands basically what Your Honors were discussing. Causes of action are added, they're subtracted. Facts are added and subtracted. And when the Regents agreed to remove this case, they did it with knowledge that it changes. Well, counsel, what do you make of the language articulated by opposing counsel where the Supreme Court seemed to imply that we should take into account the differences, the particular circumstances of the case with which we're confronted? What do you make of that language? Well, the Supreme Court in Lapidus didn't say you're supposed to look basically ad hoc in each case before you. They talked about things like special circumstances. And in my mind, those are words that usually mean something extraordinary, something beyond the usual pale of litigation. Amending causes of action and bringing in new causes of action is not beyond the ordinary. It happens all the time. Now, I was trying to think what would be a special circumstance. And to be honest, Your Honors, I can't figure out what would be a special circumstances in this case. But what the Supreme Court did say in Lapidus is that when a state agency removes an action to federal court, that state agency understands that it is litigating in federal court with all of the pros and cons that come with it. And one of the pros or cons is the fact that the federal rules of civil procedure allow a party to amend a complaint. It would be ludicrous for the Regents to assume that given a ruling such as a motion to amend, a motion to dismiss or lead to amend is granted, that the plaintiff would not amend the complaint if an amendment would put it in a better position. That's not a special circumstance, Your Honors. That's basic litigation 101, and that it could not be something that the Supreme Court would say is extraordinary. Otherwise, Your Honor, what you're saying is in a removal case, you could never amend, because there's not much difference between adding a new cause of action and amending an existing cause of action to add new facts. And what I would suggest, Your Honor, if you look at the complaint, the First Amendment complaint, we sued the Regents for equitable relief based on the issues of moral tenure. That was a cause of action that was in the First Amendment complaint. The fact that we would repackage that and take those same facts and instead name it a violation of Article I, Section 7 of the California Constitution or even a 1983 claim doesn't change the status of the case. It simply says we're going to sue you on two different causes of action for the same factual basis that's in the First Amendment complaint. For them to get up here and say we were surprised is incredulous. They couldn't have been surprised. What they did is they figured out it was better for them to be in federal court. That was their decision to make. We were stuck with that decision. It wasn't they didn't come in and ask us. Then when they got to federal court, they had the state claims were there. They could have immediately moved under Watkins and the other decisions at the time to remove those cases, the state claims, back to the state court. Instead of doing that. Remand, you mean? Yes, Your Honor. Remand back to the state court under Eleventh Amendment immunity. Instead of doing that, they moved to dismiss the claims on the merits. Judge Wilkins basically said, gave us leave to amend and dismiss. We refiled. And as to those state claims, those were pretty much the same other than some factual corrections. And we added the two claims. They then moved again for dismissal on the merits of the state claims, but added the Eleventh Amendment issues to the second and third causes of action. And the key to the strategy issue and the jockeying, which was an imperative in Judge Wilkins' decision below, was the fact that during the oral argument on this, Judge Wilkins directed questions to Mr. Lafayette about what was the scope of their claim of immunity. And as the court can see and as cited in our briefs, basically they got a waffling. First, it was only two causes of action. Then it was everything. And then it was, wait a minute, I don't even know. I have to talk to my client. And it wasn't until Judge Wilkins issued her tentative that said the motion to dismiss the state claims would be denied that the defendants came back and said Eleventh Amendment immunity on everything. What you have here is you have the clear tactics that the Ninth Circuit talked about in Hill, and Judge Wilkins found so persuasive. So the issue about whether or not in some case that we don't know about there might be special circumstances under the pitas is still there, but it doesn't apply to this case for two reasons. First, an amendment is not special. And secondly, the regents, by basically playing engagement ship, which Judge Wilkins clearly documents in her opinion, doesn't have the right to come here and make the claim. And with that, Your Honor, unless there's any questions, I would submit. Thank you, Counsel. Counsel? Thank you. First, there has not been a dismissal of those two causes of actions. There isn't one. There hasn't been any compliance with any rules relating to a dismissal. Number two, the motion for summary affirmance was denied by this court in an order that's dated August 29, 2002. That's the disposition there. The other part of this is the circumstances under which we just heard the argument, all not supported by the record. Hold on just a second. On the first thing you said. Yes. That the claims have not been dismissed. That's correct, Your Honor. Could you amplify a little, explain what you mean? Yes, Your Honor. There has been no stipulation to dismiss causes of action. There has been no proceeding filed before Judge Wilkins asking Judge Wilkins to dismiss any causes of action, no motion, no nothing. There has been no stipulation to dismiss and no motion to dismiss. That's correct, Your Honor. It was just a notice, a notice of voluntary dismissal is all that's in the record. That's all that there has been. And you're past the stage where a notice works under Rule 41. That's correct, Your Honor. Now, having said that, I'd like to move on to this timing issue and to make sure that everyone's clear with regard to the timing issue. The respondent suggests that what happens is after we get a tentative decision from Judge Wilkins that somehow she decides that she wants to rule against the regents, the regents asserts the 11th Amendment immunity. That is flat wrong. I asked the Court to take a look at the record at page 677 and 678. Before that discussion ever took place before Judge Wilkins, these two issues were presented to Judge Wilkins for determination. Isn't that what provoked Judge Wilkins' question regarding what the State's position was on qualified 11th Amendment immunity? At the oral argument some one month later, maybe that's what provokes her question. But the issue is this. Read the entire record, and what you see is there becomes ambiguity because we don't know at that point what the true state of the law is. But wasn't it incumbent upon the State to remove any ambiguity regarding whether it wanted to invoke 11th Amendment immunity or not? And we did. And if you look at the record, the request was made of Judge Wilkins to allow counsel to consult with its client before resolving that issue, and counsel did, and counsel did advise the Court of where its position lies at that point in time. And would you point us to the record where after consulting with your client, you unequivocally invoked the 11th Amendment immunity? Yes. There was a stipulation entered into between the parties, and I'll find it for you. Page 844 and 845. At Judge Wilkins' request, the parties prepared a status report, remand of state claims. And that document was filed with the district court and pointed out to the district court exactly what the university's position was and what the plaintiff's position was. There was no hiding the ball or jumping around or playing for any tactical advantage  Counsel, the status report that we have in the record, at least the one I have, is not signed. Is there one that was signed? Since they do e-filings in the northern district court, the only thing that we can do is submit these documents electronically, and when we submit them electronically, they don't have signatures on them. But that is the e-filed document, and that's why it's been presented to the court. So there has never been a waiver from the university's standpoint, and specifically with regard to these causes of actions. As soon as they were known, the university presented its argument in favor of the 11th Amendment immunity, and that's undisputed, and it did so at the earliest opportunity, and it did not equivocate with regard to these two causes of actions. The only thing that Judge Wilkins asked was whether or not it also wanted to include that immunity with regard to the other claims, which were removed prior to these two causes of actions were embedded in the complaint. And again, plaintiffs or the respondent cannot demonstrate to this court that they ever sought or obtained leave of court to file those two causes of actions. These are not the same complaints. Looking at the first complaint, looking at the first amended complaint, and looking at the second amended complaint, they are all radically different. In fact, the first one is probably four pages longer. They never got leave of court to file those causes of action. You mean they didn't move for leave to amend and have an order granting leave to amend? That's exactly what I'm saying, Your Honor. That never happened. Judge Wilkins gave leave to file secure defects in an existing complaint, the first amended complaint, and what we get back is a second amended complaint that includes two new causes of actions, that weren't in the first amended complaint. Was that amended complaint accepted by the court, or is it the operative complaint for the record? As far as we objected to those causes of actions, and that's one of the reasons why we're here now, because we objected to those causes of actions, and we immediately advised the court that those were not, one, they were not sanctioned or approved. Number two, they violate the 11th Amendment immunity. That's what we did. On the amendment objection I understand you made, did you ever move to strike them on the ground that the court had not granted leave to amend in that fashion? No, Your Honor. The first thing that happens after we move to the 11th Amendment immunity is that the court makes its ruling, and then in order to preserve our appellate position, we immediately file the appeal, which divested the court of jurisdiction over that matter, so it's not something that we could actually take to the court and have the court address, because jurisdiction of the regent's case is here. Thank you, counsel. Thank you, Your Honor.
judges: Canby, Kleinfeld, Rawlinson